**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MENACA ESTUARDO,** | ) | |
| **Petitioner,** | ) | **Civil Action No. 12-157 Erie** |
| | ) | |
| **v.** | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **BOBBY L. MEEKS,** | ) | |
| **Respondent.** | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**   **RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed pursuant to

28 U.S.C. § 2241 by Petitioner[1] be denied and that this case be closed.

**II.**   **REPORT**

Petitioner, who is currently incarcerated at the Federal Correctional Institution ("FCI") McKean,

challenges a disciplinary action taken when he was incarcerated at FCI Fort Dix, New Jersey, in

connection with an incident report issued on May 5, 2011.  On that date, an officer observed Petitioner

talking on a cell phone.  He was charged with <u>Possession, Manufacture or Introduction of a Hazardous</u>

<u>Tool</u> in violation of Prohibited Act Code 108, and subsequently was found to have committed that

violation.  A code level 100 misconduct is the most serious form of misconduct.

**A.**   **Relevant Background**

On December 5, 2003, Petitioner was sentenced in the U.S. District Court for the Middle District

of Florida to 135 months, with three years of supervised release, for possession with intent to distribute

---

[1]      In his initial filings, Petitioner wrote his name as "Menaca Estuardo."  However, in the Bureau of Prison's (the
"BOP's") records, his name is listed as "Estuardo Menaca."

five kilograms or more of cocaine, 46A U.S.C. §§ 1903(a) and (g); 18 USC §§ 2; 21 USC

§ 960(b)(1)(B)(ii).  His projected release date is July 6, 2013.

At the time that Petitioner was charged with committing the infraction at issue in this case,

Code 108 read that the following was a prohibited act:

> Possession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)

28 C.F.R. § 541.13, Table 3.[2]

On December 28, 2009, FCI Fort Dix's Warden issued a Memorandum For Inmate Population, in

which she explained:

> This is a reminder that inmates found in possession of electronic communication devices, or related equipment such a s a cell phone, cell phone charger, laptops, ipods, etc., will be charged with a violation of Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool, or Code 199, most like Code 108.  Also, please remember Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>, states it is an inmate's responsibility to keep his or her area free of contraband.  Inmates will be subject to all available sanctions if found to have committed the prohibited act.

[ECF No. 11-2 at 16].

On May 5, 2011, at approximately 7:30 p.m., an officer at FCI Fort Dix confiscated a cell phone

from Petitioner and issued an incident report charging him with a Code 108 violation.  Petitioner told the

investigating Lieutenant, "I am guilty it is true the phone is my [sic]."  [ECF No. 11-2 at 18-19].

On May 9, 2011, the Unit Discipline Committee ("UDC") convened for an initial hearing on the

matter.  Because the UDC recommended sanctions that were not available at the UDC level, the incident

was referred to the Disciplinary Hearing Officer ("DHO") for further action.  [ECF No. 11-2 at 18].

---

[2]    On June 20, 2011, shortly after the events in question in this case, the BOP revised Code 108 to provide additional examples of "hazardous tools," including a "portable telephone, pager, or other electronic devise."  28 C.F.R. § 541.3 (effective June 20, 2011).

Petitioner's hearing before the DHO was held on May 16, 2011. He admitted that he had possessed the cell phone and that he had paid another inmate $150 for it. [ECF No. 11-2 at 25].

At the conclusion of the hearing, the DHO determined that Petitioner committed a Code 108 violation. The DHO also explained why a cell phone is considered to be a hazardous tool:

> The action on the part of any inmate to possess, manufacture, or introduce a hazardous tool into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. In the recent past, inmates have used hazardous tools to affect escapes, and seriously injure other inmates and staff members. A cell phone falls under the classification of a hazardous toll, as it has been used to arrange rendezvous for escapes, and has been used to arrange contraband introductions, and further allows the inmate to make contact with individuals outside the institution, possibly for illicit or illegal activities, without the knowledge of staff. In accordance with the memorandum dated December 28, 2009, submitted by Donna Zickefoose, Warden, a cell phone is considered a threat to the security and orderly running of the institution, not only of the inmate involved, but that of the entire institution.

[ECF No. 11-2 at 27].

The DHO imposed the following sanctions: (1) 30 days of disciplinary segregation from May 16, 2011, through June 14, 2011; (2) 40 days of disallowance of GCT; (3) 160-day forfeiture of Non-Vested GCT; (4) 30 days of loss of commissary privileges from May 16, 2011, through June 14, 2011; (5) 18 months loss of TRULINCS privileges from May 16, 2011, through November 15, 2012; (6) 18-month loss of telephone privileges from May 16, 2011, through November 5, 2012; and (7) 30 days of loss of visiting privileges from May 16, 2011, through June 14, 2011. [ECF No. 11-2 at 26].

Petitioner appealed the DHO's decision through the BOP's administrative review process. He did not challenge the DHO's finding that he possessed a cell phone. Rather, he contended that he should have been found to have committed the less severe Code 305 violation, Possession of Anything Not Authorized. [ECF No. 6-1 at 7]. The Regional Director denied his appeal and referenced the December 28, 2009, memorandum issued by the Warden that advised the inmate population that any inmate found in possession of a cell phone may be charged with a Code 108 violation. [ECF No. 6-1 at

3

9]. Petitioner appealed that decision to the Central Office, which is the last phase of the BOP's administrative remedy process.

On April 25, 2012, the Administrator of National Inmate Appeals denied Petitioner's appeal, explaining in relevant part:

> Review of the record reveals that "an electronic communication device or related equipment" may be charged as a code 108 offense. Notification of this was provided to all inmates in Summer 2006 and has been routinely provided to the inmate population since. The Code 108 offense is appropriate for possession of a cell phone due to the disruptive nature cell phones pose in the correctional environment. There is no requirement that the Code of Federal Regulations language specify each item which might possibly be considered a hazardous tool for purposes of the Code 108 offense…. [Code 108's] language combined with specific notice provided to all inmates regarding electronic communication devices, is adequate.

[ECF No. 6-1 at 8].

Petitioner argues in this action that the BOP did not provide proper notice that a cell phone would be considered a "hazardous tool." Specifically, he claims that the BOP violated the Administrative Procedures Act, 5 U.S.C. § 551, *et seq.* ("APA") when it instituted the rule that classified them as such. He argues that, at a minimum, his charge should have been reduced to a less severe Code 305 violation, <u>Possession of Anything Not Authorized</u>, as was done in previous cases involving other inmates. He contends that because it was not, his rights under the Equal Protection Clause were violated. Finally, Petitioner argues that Code 108 is void for vagueness.

Respondent has filed an Answer [ECF No. 11], to which Petitioner has filed a Reply [ECF No. 12].

## B. Subject Matter Jurisdiction

28 U.S.C. § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." <u>McGee v. Martinez</u>, 627 F.3d 933, 935

(3d Cir. 2010) (emphasis added) (quoting <u>Coady v. Vaughn</u>, 251 F.3d 480, 485 (3d Cir. 2001) and citing <u>Woodall v. Fed. Bureau of Prisons</u>, 432 F.3d 235, 241 (3d Cir. 2005)).  In <u>McGee</u>, the Third Circuit Court instructed that "the question to be asked is whether granting the petition would 'necessarily imply' a change to the fact, duration, or execution of the petitioner's sentence."  627 F.3d at 936.  In another case, it held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence."  <u>Queen v. Miner</u>, 530 F.3d 253, 254 (3d Cir. 2008) (per curiam) (citations omitted).

### C.    Discussion

#### 1.    The BOP's Classification of Cell Phones As Hazardous Tools

Petitioner claims that his due process rights were violated because he was unaware that the BOP considered cell phones to be hazardous tools.  This claim is denied because the inmates at FCI Fort Dix were advised that if they were found in possession of electronic devises or related equipment, such as cell phones and chargers, they could be charged with a violation of Code 108.  [ECF No. 6-1 at 8-9; ECF No. 11 at 16].  And, even if the Court assumed without deciding that he did not receive the Warden's memoranda and other updates specifically regarding cell phones, there is no dispute that he was on notice that Code 108 prohibited the possession of any tool likely to be used in an escape or escape attempt.  A cell phone falls within that broad definition.  Petitioner claims that it does not and that Code 108 is "void for vagueness," but the U.S. Court of Appeals for the Third Circuit has denied that exact same argument:

> [The petitioner] also argued that his right to due process was violated because PAC 108 is void for vagueness.  A regulation is void for vagueness if it (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) authorizes or even encourages arbitrary and discriminatory enforcement."  <u>Hill v.</u>

> Colorado, 530 U.S. 703, 732, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). We are not
> persuaded that PAC 108 is unconstitutionally vague. **One can readily infer from the
> language of PAC 108 that a cellular phone would be among those tools hazardous to
> institutional security and likely to be used in an escape or escape attempt.
> Accordingly, [the petitioner's] void for vagueness claim lacks merit.**

Ryan v. Scism, 474 F.App'x 49, 52 (3d Cir. 2012) (per curiam) (emphasis added).

Petitioner's real complaint is with the BOP's decision to classify cell phones as "hazardous tools," thereby making the possession or attempted possession of them fall within the ambit of the version of Code 108 in effect at the time in question here. Other federal prisoners have made the same challenge to the BOP's decision, and their requests for habeas relief have been rejected repeatedly by the Third Circuit Court because it is well-settled that "[a]n agency's interpretation of its own regulations is 'controlling … unless it is plainly erroneous or inconsistent with the regulation.'" Chong v. Dist. Dir. INS, 264 F.3d 378, 389 (3d Cir. 2001) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)). For example, in Hicks v. Yost, 377 F.App'x 223, 224-25 (3d Cir. 2010) (per curiam), the court held that "the absence of the term 'cell phone' in the text of [the prior version of] Code 108 did not prevent the BOP from interpreting that provision to include this item." The court further held that the BOP's interpretation of Code 108 is not plainly erroneous or inconsistent with that provision and, therefore, cannot be disturbed by a federal court sitting in habeas. Id. (citing Chong, 264 F.3d at 389). See also Ryan, 474 F.App'x at 52 (petitioner "has not shown that [the] BOP's interpretation that the possession of [a] cellular phone is a prohibited act under PAC 108 is plainly erroneous or inconsistent with the regulation."); Materon v. Ebbert, 446 F.App'x 405, 407 (3d Cir. 2011) (per curiam) ("The DHO determined, in accordance with a memorandum issued by the warden, that cell phones were 'hazardous tools' because they could be used to facilitate escape or to engage in other illegal activities, and thus represent 'a threat to the security and orderly running of the institution.' … This interpretation is consistent with the language of Code 108, and we thus discern no error in the DHO's analysis."); McGill

v. Martinez, 348 F.App'x 718, 721 (3d Cir. 2009) (same); Robinson v. Warden, 250 F.App'x 462, 464 (3d Cir. 2007) (same).

Petitioner also argues that the BOP's rule to include cell phones as a "hazardous tool" within the prior version of Code 108 is invalid because it was not promulgated in accordance with the APA's notice-and-comment procedures, set forth at 5 U.S.C. § 553. This claim also has no merit.

The APA provides that an agency may not adopt a "rule" (commonly referred to as a "legislative rule" or "substantive rule") without providing prior notice and comment through publication in the Federal Register. 5 U.S.C. § 553(b), (c). It defines a "rule" as "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency[.]" Id. § 551(4). Rules that are issued in violation of the APA are invalid.

On the other hand, "interpretive" rules seek only to interpret language already in properly issued regulations. If the agency is not adding or amending language to the regulation, the rules are interpretive. Interpretive, or "procedural," rules do not themselves shift the rights or interests of the parties, although they may change the way in which parties present themselves to the agency. Interpretive or procedural rules and statements of policy are exempted from the notice-and-comment requirement. Chao v. Rothermel, 327 F.3d 223, 227 (3d Cir. 2003) (citations omitted); Dia Navigation Company v. Pomeroy, 34 F.3d 1255, 1264 (3d Cir. 1994).

Under the regulation in effect at the time at issue here, Code 108 included all tools likely to be used in an escape or escape attempt, and a cell phone falls within that definition. Therefore, the inclusion of cell phones as "hazardous tools" under Code 108 was an interpretative rule and not subject to the notice-and-comment requirement of the APA. Ryan, 474 F.App'x at 52 ("The APA applies only to legislative rules, rules that impose new duties upon the regulated party.... PAC 108, however, is an

interpretive rule, and therefore the APA does not apply."); <u>Hall v. Zickefoose</u>, 448 F.App'x 184, 186 (3d Cir. 2011) (per curiam) ("The APA does not apply to PAC 108 because PAC 108 is an interpretive rule.").

Based upon all of the foregoing, Petitioner's due process and APA claims have no merit and must be denied.

### 2. The Application of Code 108 To Petitioner Did Not Violate the Equal Protection Clause

The Equal Protection Clause requires that all people similarly situated be treated alike. <u>See</u>, <u>e.g.</u>, <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). A petitioner who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination that had a discriminatory effect on him. <u>McCleskey v. Kemp</u>, 481 U.S. 279, 292 (1987); <u>Whitus v. Georgia</u>, 385 U.S. 545, 550 (1967). "Thus, to prevail under the Equal Protection Clause, [Petitioner] must prove that the decisionmakers in his case acted with discriminatory purpose." <u>Id.</u>

Petitioner contends that the BOP violated his equal protection rights because some inmates found to be in possession of a cell phone had their Code 108 violations eventually reduced to the lesser charge of Code 305, <u>Possession of Anything Not Authorized</u>. In support of this claim, he cites to two cases in which the inmate eventually received less severe punishment for the same violation committed by him: <u>Neagle v. Grondolsky</u>, No. 09-2016, 2010 WL 2546021 (D.N.J. June 18, 2010) and <u>Hudson v. Zickefoose</u>, No. 251, 2010 WL 4746220 (D.N.J. Nov. 15, 2010). Petitioner has failed, however, to put forth sufficient evidence to show that these inmates were similarly situation to him or that his disciplinary sanction was the result of purposeful discrimination. Other federal inmates have made the same claim, and the Third Circuit Court has found it to be without merit for the same reasons. <u>Lloyd v. Shartle</u>, No. 12-3883, 2013 WL 540351, *2 (3d Cir. Feb. 14, 2013) ("We also agree with the District

8

Court that Lloyd's equal protection rights were not violated by the disciplinary proceedings. In order to succeed on such a claim, Lloyd must demonstrate that the decisionmakers in his case acted with a discriminatory purpose. Here, he alleges only that two other inmates previously had their Code 108 violations for possessing a cell phone eventually reduced to lesser charges.") (citing McCleskey, 481 U.S. at 292, and quoting Rhodes v. Robinson, 612 F.2d 766, 775 (3d Cir. 1979) for the proposition that "[b]ecause the punishment handed down in any case of prisoner misconduct is determined on the basis of the facts of the particular case, the equal protection clause cannot require exact uniformity in degrees of punishment.")). See also Ryan, 474 F.App'x at 52-53 ("Although [the petitioner] alleged that inmates Hudson and Neagle received a lesser sanction than he for the same prohibited act, he failed to offer evidence that Hudson and Neagle were similarly situated to him. Moreover, [the petitioner] was sanctioned in conformity with the regulation. Accordingly, his equal protection claim fails."); Hall, 448 F.App'x at 187 (same); Millard v. Hufford, 415 F.App'x 348, 350 (3d Cir. 2011) (per curiam) ("Millard cited various cases in which inmates received less severe punishment for the same violation committed by Millard (possession of a weapon), arguing that because he received harsher punishment than other inmates for the same offense, the punishment must have been the result of discrimination .... Millard's argument falls well short of establishing the purposeful discrimination necessary to make out an equal protection claim.") (citing McCleskey, 481 U.S. at 292)).

Based upon all of the foregoing, Petitioner's equal protection claim lacks merit and should be denied.

### III.   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied and that this case be closed.[3]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the petitioner must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation.  Failure to do so will waive the right to appeal.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n.7 (3d Cir. 2011).




<u>/s/ Susan Paradise Baxter</u>
SUSAN PARADISE BAXTER
United States Magistrate Judge


Dated:  February 25, 2013

cc:      The Honorable Sean J. McLaughlin
         United States District Judge

---

[3]      Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition.  Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement.  <u>United States v. Cepero</u>, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).